**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN - 5 2003

LUTHER D. THOMAS, Clerk
By: J. Dugg Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| WESLEY FORTENBERRY, Derivatively on Behalf of Nominal Defendant AFC ENTERPRISES, INC., | ) )  ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| FRANK J. BELATTI, KELVIN J. PENNINGTON, JOHN M. ROTH, RONALD P. SPOGLI, PETER STARRETT, CAROLYN H. BYRD, VICTOR ARIAS, JR., MATT L. FIGEL, R. WILLIAM IDE, III, DICK R. HOLBROOK, GERALD WILKINS, and FREEMAN SPOGLI & CO., | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) ) |
| -and- | ) ) |
| AFC ENTERPRISES, INC., a Minnesota Corporation, | ) ) ) |
| Nominal Defendant. | ) ) ) |

Civil Action No. **1:03 CV-1584**

~~GET~~

DERIVATIVE ACTION

JURY DEMAND

## VERIFIED DERIVATIVE COMPLAINT

### I.

### NATURE OF THE ACTION

1.     This is a shareholders' derivative action brought in the right of, and for the benefit of,

nominal defendant AFC Enterprises, Inc. ("AFC" or the "Company") against its Board of Directors,

certain top officers and its controlling shareholder seeking to remedy defendants' breaches of

fiduciary duties and other violations of law which have inflicted millions of dollars in damages upon

AFC's reputation, goodwill and standing in the business community and have exposed it to millions

1

FORMS RECEIVED
Consent To US Mag. ✓
Pretrial Instructions ✓
Title VII NTC .

of dollars in potential liability for violations of state and federal law. The actions arise out of

defendants' causing AFC to file false financial statements during fiscal year 2000 and through April

22, 2003 (the "Relevant Period"), resulting in the announcement of two earning restatements dating

all the way back to 2000 which have greatly damaged AFC and the sale of millions of dollars of AFC

stock at inflated prices exposing the company to millions of dollars in potential liability. These two

pending restatements, along with the false financial statements the defendants caused to be issued

during the Relevant Period, have caused severe, irreparable, injury and damages to the Company,

particularly to its reputation and goodwill in the investment and business community, and have

virtually destroyed this once valuable franchise.

## II.

## SUMMARY OF THE ACTION

2.        AFC operates, develops and franchises quick-service restaurants, bakeries and cafes,

primarily under the trade names Popeyes Chicken & Biscuits, Church's Chicken, Cinnabon, Seattle's

Best Coffee and Torrefazione Italia. Collectively, AFC compromises over 4,000 restaurants in 47

states, the District of Columbia, Puerto Rico and 3 foreign countries.

3.        On March 24, 2003 after the close of trading, AFC shocked the investment

community by disclosing that the Company's previously issued financial statements could no longer

be relied upon and would have to be restated for 2001 and for the first three quarters of 2002, and

that the Company expected to miss the March 31, 2003 deadline for filing it's 2002 Annual Report.

The Company also revealed that the restatement might include fiscal year 2000 as well. Based on this

news, on March 25, 2003, AFC stock lost over 21% of its value on enormous trading volumes of

over 9 million shares, dropping $3.70 to close at $13.40, a 52 week low. As a result, between March

2

25, 2003 and April 1, 2003 the Company's market value fell from $526.3 million to $400.1 million, erasing $126.2 million worth of market capitalization. In addition, on April 22, 2003 the Company announced it would also be restating financial statements for 2000.

4.      As now revealed, by the restatements, at all times during the Relevant Period, the defendants issued false and misleading financial statements and press releases concerning AFC's financial results that they knew were false when issued. The financial statements of the Company made during the Relevant Period, all of which implicitly and/or expressly were prepared in conformity with generally accepted accounting principals ("GAAP"), were materially false and misleading because defendants caused the Company to materially overstate its earnings during the Relevant Period.

5.      As a result of the false financial statements issued during the Relevant Period by defendants, AFC's stock traded at artificially inflated levels. Certain defendants and Company insiders took advantage, *cashing out during the Relevant Period at prices as high as $34 per share, reaping profits of hundreds of millions of dollars.*

6.      In addition, AFC is at serious risk of being de-listed from NASDAQ. On April 16, 2003 the Company was notified by The NASDAQ Stock Market, Inc. that it intends to delist the AFC's common stock from NASDAQ, due to the Company's failure to timely file its Annual Report on Form 10-K for 2002. The Company has been forced to seek a hearing before the NASDAQ Listing Qualifications Panel to appeal this determination and seek additional time to file the Form 10-K following completion of the restatements of its false financial statements. Moreover, so the Company would not be in violation of its financial covenants with its lenders, it was forced to amend its credit facility agreements with its lenders for additional time to complete its 2002 "year end" audit

3

process and submit its financial statements and related reports such as the annual budget and excess flow calculation and certification.

7.     As a direct result of this illegal course of conduct, the Company is now subject to several class action lawsuits filed, in the United States District Court for the Northern District of Georgia, Atlanta Division, on behalf of investors who purchased AFC shares which allege that investors purchased shares of the Company based on false and materially misleading statements regarding the financial condition of the Company, and that they have been significantly damaged thereby. Specifically, those actions allege that defendants caused AFC to: (i) materially overstate its operating results by failing to properly account for operating results; (ii) deceived the investing public regarding AFC's business, its finances and intrinsic value of AFC common stock; (iii) issue false and misleading financial statements; and as a result of the foregoing, caused investors to purchase AFC common stock at artificially inflated prices.

8.     In addition, as a result of defendants' illegal actions, the goodwill and reputation of the Company have also been severely damaged, which will make it difficult if not impossible to raise money needed to fund AFC going forward. The Company has been downgraded by numerous analysts who have attacked the Company's credibility and that of its senior management.

9.     The Individual Defendants herein (as defined in ¶¶ 15-25), who are directors and/or officers of AFC, participated in this conspiracy to obtain the financial and social benefits of such positions for themselves, to enrich and further the personal and business interests of all defendants identified herein, and to allow all the Individual Defendants to maintain their positions of control at AFC so that they would not be sued for their wrongdoing. The directors who did not sell stock during the Relevant Period participated by approving of AFC's false financial reporting and are

4

unwilling to sue to recover the insider trading proceeds as they too have sold significant numbers of shares because to sue the other directors would bring scrutiny on their own transactions in the Company's stock. As a result of defendants' wrongful acts, the Company has suffered severe damage to its reputation, goodwill and its ability to conduct future operations.

## III.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) (2002) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 (2002) and supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) (2002).

11.    This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

12.    Venue is proper in the Court because Nominal defendant AFC is headquartered in this County and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## IV.

## PARTIES

13.    Plaintiff Wesley Fortenberry, a resident of the State of Alabama, is and was at all relevant times complained of herein, a shareholder of nominal defendant AFC.

5

14.     Nominal defendant AFC is a Minnesota corporation with its principal executive offices located at Six Concourse Parkway, Suite 1700, Atlanta, GA 30328.

15.     Defendant Frank J. Bellati (hereinafter "Bellati") was, at all relevant times, Chairman of the Board of AFC, its Chief Executive Officer ("CEO"), and is currently its interim Chief Financial Officer ("CFO) and a member of its Executive (Chair) and Strategic Development Committees. Bellati is a citizen of Georgia residing at 330 Cannady Court, Atlanta, Georgia 30350. As a director of AFC, Bellati owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as its CEO and a member of AFC's Executive and Strategic Development Committees, Bellati had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Bellati owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Belatti also serves on the board of directors of Galyan's Trading Company, Inc., along with director defendants' John M. Roth, Ronald P. Spogli, and Peter Starlett. In 1996, Belatti oversaw the sale of a major stake in AFC to an investment firm, Freeman Spogli & Co. Two of the principals of Freeman Spogli & Co, defendants John Roth and Ronald Spogli, joined the AFC board that same year and continue to serve as directors. Freeman Spogli & Co is AFC's largest shareholder, as identified in the Company's 2002 Proxy, owning 24.4% of the Company's stock. During the Relevant Period, Bellati engaged in massive insider trading disposing of 438,000 shares for proceeds of $10,682,750. In addition to his

6

base salary of approximately $560,000 per year from 2000 through 2002, Bellati received the following bonuses and stock options based on the Company's materially overstated financial performance:

| Year | Bonus | Number of Stock Options |
|------|-------|------------------------|
| 2000 | $432,500 | 33,333 |
| 2001 | $382,812 | 60,000 |

16.     Defendant Kelvin J. Pennington ("Pennington") was, at all relevant times, a director of AFC and a member of its Audit and Compensation Committees. Pennington is a citizen of Illinois residing at 1621 North Larrabee Street, Chicago, Illinois 60614. As a director of AFC, Pennington owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit and Compensation Committees, Pennington had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company, particularly, as a member of the Audit Committee, with respect to the Company's internal systems of accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Pennington owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, Pennington engaged in massive insider trading disposing of 1,574,637 shares for proceeds of $35,084,491.

7

17.     Defendant John M. Roth ("Roth") was, at all relevant times, a director of AFC and a member of its Executive and Compensation Committees. Roth is a citizen of Connecticut residing at 349 Lake Avenue, Greenwich, Connecticut 06830.  As a director of AFC, Roth owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company.  Moreover, as a member of its Executive and Compensation Committees, Roth had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Roth owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Roth also serves on the board of directors of Galyan's Trading Company, Inc. along with defendant directors Belatti, Ronald P. Spogli, and Peter Starrett. Roth also serves on the board of directors of Advance Auto Parts, Inc. along with director defendant Ronald P. Spogli. Roth is a principal of Freeman Spogli & Co. which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock. During the Relevant Period, Roth, along with defendant Ronald P. Spogli, through FS Equity Partners, engaged in massive insider trading by selling 6,624,000 shares held indirectly for proceeds of approximately $145,065,600.

18.     Defendant Ronald P. Spogli ("Spogli") was, at all relevant times, a director of AFC and a member of its Executive Committee. Spogli is a citizen of California residing at 18104 Via Roswitha, Rancho Santa Fe, California 92067. As a director of AFC, Spogli owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the

8

Company. Moreover, as a member of its Executive Committee, Spogli had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Spogli owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Spogli also serves on the board of directors of Galyan's Trading Company, Inc. along with defendant directors Belatti, Roth and Peter Starrett. Spogli also serves on the board of directors of Advance Auto Parts, Inc. along with director defendant Roth. Spogli is a founding principal of Freeman Spogli & Co. which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock. During the Relevant Period, Spogli, along with defendant Roth, through FS Equity Partners, engaged in massive insider trading by selling 6,624,000 shares held indirectly for proceeds of approximately $145,065,600.

19.    Defendant Peter Starrett ("Starrett") was, at all relevant times, a director of AFC. Starrett is a citizen of California residing at 12957 San Vincente Boulevard, Los Angeles, California 90049. As a director of AFC, Starrett owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Rather than fulfill these important fiduciary duties Starrett owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Starrett

9

also serves on the board of directors of Galyan's Trading Company, Inc. along with defendant directors Belatti, Roth and Spogli. Starrett is an affiliated operating executive of Freeman Spogli & Co. which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock. During the Relevant Period, Starrett engaged in insider trading disposing of 15,000 shares for proceeds of $453,995.

20.     Defendant Carolyn H. Byrd ("Byrd") was, at all relevant times, a director of AFC and Chair of its Audit Committee. Byrd is a citizen of Georgia residing at 5300 Lake Forest Drive, Northeast, Atlanta, Georgia 30342. As a director of AFC, Byrd owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member and Chair of its Audit Committee, Byrd had also assumed important managerial responsibilities at AFC which required her to be well informed about the day-to-day operations of the Company, particularly, as a member and Chair of the Audit Committee, with respect to the Company's internal systems of accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Byrd owed to AFC and its shareholders she, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Byrd also serves on the board of directors of Rare Hospitality International, Inc. along with defendant director Dick R. Holbrook.

21.     Defendant Victor Arias, Jr. ("Arias") was, at all relevant times, a director of AFC and a member and Chair of its Compensation Committee. Arias is a citizen of Texas residing at 1801

10

Northern Oak Circle, Irving, Texas 75063. As a director of AFC, Arias owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member and Chair of its Compensation Committee, Arias had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Arias owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions.

22.      Defendant Matt L. Figel ("Figel") was, at all relevant times, a director of AFC and a member of its Audit Committee. Figel is a citizen of California residing at 533 4th Street, Manhattan Beach, California 90266. As a director of AFC, Figel owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit Committee, Figel had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company, particularly, as a member and Chair of the Audit Committee, with respect to the Company's internal systems of accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Figel owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. From October 1986 to December

11

1996, Figel was employed by Freeman Spogli & Co. which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock.

      23.     Defendant R. William Ide, III ("Ide") was, at all relevant times, a director of AFC and a member and Chair of its Strategic Development Committee. Ide is a citizen of Georgia residing at 1457 Morningside Drive, Atlanta, Georgia 30306.  As a director of AFC, Ide owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company.  Moreover, as a member and Chair of its Strategic Development Committee, Ide had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Ide owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions.

      24.     Defendant Dick R. Holbrook ("Holbrook") was, at all relevant times, a director of AFC, its President, Chief Operating Officer ("COO"), and a member of its Strategic Development Committee. Holbrook is a citizen of Georgia residing at 1015 Heards Ferry Road, Northwest, Atlanta, Georgia 30328.  As a director of AFC, Holbrook owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as President, COO and a member of its Strategic Development Committee, Holbrook had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Holbrook owed to AFC and its shareholders he, upon information and belief, actively participated in

12

or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Holbrook also serves on the board of directors of Rare Hospitality International, Inc. along with defendant director Byrd. During the Relevant Period, Holbrook engaged in massive insider trading disposing of 260,500 shares for proceeds of approximately $6,318,660.

25.     Defendant Gerald Wilkins ("Wilkins") was, at all relevant times, prior to his resignation on or about April 29, 2003, a director of AFC, its CFO and Executive Vice President. Wilkins is a citizen of Georgia residing at 2790 Carmon On Wesley, Northwest, Atlanta, Georgia 30327. As a director of AFC, Wilkins owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as CFO and Executive Vice President, Wilkins had also assumed important managerial responsibilities at AFC which required him to be well informed about the day-to-day operations of the Company, particularly, as CFO, with respect to the Company's internal systems of accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Wilkins owed to AFC and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of AFC by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, Wilkins engaged in massive insider trading, disposing of 40,000 shares on January 23, 2002 for proceeds of approximately $1,102,000 through the exercise of options, and disposing of another 30,000 shares on March 11, 2002 through the exercise of

13

options at prices as high as $34 per share, for proceeds of approximately $964,000. In addition to his base salary of approximately $342,000 per year from 2000 through 2002, Holbrook received the following bonuses and stock options based on the Company's materially overstated financial performance:

| Year | Bonus | Number of Stock Options |
|------|-------|-------------------------|
| 2000 | $200,000 | 20,000 |
| 2001 | $362,359 | 40,531 |

26.    Defendant Freeman Spogli & Co. ("Freeman Spogli) is a privately owned investment firm located at 11100 Santa Monic Boulevard, Suite 1900, Los Angeles, California 90025. Defendants Roth and Spogli are principals of Freeman Spogli and defendant Starrett is an affiliated operating executive of Freeman Spogli.  In addition, from October 1986 to December 1996, defendant Figel was employed by Freeman Spogli. Through its various limited and/or general partners, Freeman Spogli is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock, making it a controlling shareholder.  During the Relevant Period, Freeman Spogli, while in possession of material, adverse, non-public information concerning AFC, disposed of millions of dollars worth of AFC stock through its various limited or general partners. Freeman Spogli also invests in other companies in which AFC directors, including Roth and Spogli themselves, sit on the boards including Galyan's Trading Company (Belatt, Roth, Spogli, and Starrett directors); Advance Auto Parts (Roth and Spogli directors); Asbury Automotive (Roth director); Hudson Respiratory Care, Inc. (Spogli director); and The Pantry, Inc. (Starrett director).

14

27.     The Defendants identified above in ¶¶15-25 are collectively referred to hereinafter as

the "Individual Defendants."  For demand futility purposes, the Defendants identified in ¶¶15-24,

who make up the current Board of AFC, are referred to as the "Current Director Defendants."

**V.**

**FACTS**

28.     AFC operates, develops and franchises quick-service restaurants, bakeries and cafes,

primarily under the trade names Popeyes Chicken & Biscuits, Church's Chicken, Cinnabon, Seattle's

Best Coffee and Torrefazione Italia. Collectively, AFC compromises over 4,000 restaurants in 47

states, the District of Columbia, Puerto Rico and 3 foreign countries.

29.     On March 24, 2003, after the close of the market, the Individual Defendants caused

the Company to issue a press release entitled "AFC Enterprises to Restate Earnings for 2001 and

First Three Quarters of 2002" which stated in relevant part:

> [AFC] will restate earnings for 2001 and the first three quarters of 2002. The
> restatement announced today results from a detailed review of the Company's
> financial accounting and reporting that was precipitated by the adjustments that the
> Company reported in the third quarter of 2002 and those identified in the Company's
> closing process for 2002. Working with the Company's new auditors KPMG LLP,
> management has re-evaluated many of its accounting policies and applications of
> generally accepted accounting principles. This process has resulted in a number of
> adjustments that will be reflected in this restatement.

30.     The Company also revealed that the restatement might include fiscal year 2000 as

well.  On March 25, 2003, AFC stock lost over 21% of its value on enormous trading volumes of

over 9 million shares, dropping $3.70 to close at $13.40, a 52 week low. As a result, between March

25, 2003 and April 1, 2003, the Company's market value fell from $526.3 million to $400.1 million,

erasing $126.2 million worth of market capitalization.

31.     As a result of the Company's shocking announcement of the restatement, numerous analysts attacked the credibility of the Company and that of its management. For example, Salomon Smith Barney analyst Mark Kalinowski called the restatement announcement a "bombshell" in a report to investors, and withdrew his 2003 earnings and target price until the restatements are clarified. Similarly, Richard Glass, a Morgan Stanley Investment Manager, voiced shock concerning the news during a March 24, 2003 conference call stating: *"[t]here has to be some accountability in the company and changes need to be made if management is at all ... interested in regaining any credibility in the financial community. Because right now its got to be zero - or below zero."*

32.     A report by CIBC World Markets, Inc on April 3, 2003 entitled "AFC Enterprises, Inc: 1Q03 Business Update Dissapoints" concluded:

> *"Given the scope of uncertainty around historical earnings, it is at this point impossible to have accurate prospective earnings estimates and therefore we will continue to withhold our estimates pending a final outcome of the '01 and '02 audits. We maintain our Sector Underperformer rating as we believe it will take a considerable amount of time before the company rebuilds shareholder credibility."*

33.     An article in the *Atlanta Business Cronicle* on April 7, 2003 by Walter Woods entitled "Stock sold before AFC 'bombshell'", in discussing certain insider sales months before the announcement of the restatement, noted that *"Analysts described the announcement as a 'bombshell' that fried AFC's credibility on Wall Street."*

34.     A report by Citigroup on April 15, 2003 entitled "AFCE: Is AFC at Risk of Being De-Listed from NASDAQ?", discussing the possibility that AFC could receive a de-listing notice the next day for failure to timely file its year 2002 from 10-K, stated in relevant part:

> *"With management credibility already exceedingly low on the Street, this just adds more reason why we choose to stick with our Underperform (3H) rating on the shares ..."*

* * *

*AFC already suffers from large credibility issues, in the Street's eyes. These stem
from items such as the March 24 announcement that the company would restate
full-year 2001 and Q1-Q3 2002 earnings due to accounting issues.*

35.     Indeed, on April 16, 2003 the Company was notified by The NASDAQ Stock Market,
Inc. that it intends to delist the AFC's common stock from NASDAQ due to the Company's failure to
timely file its Annual Report on Form 10-K for 2002. The Company has been forced to seek a
hearing before the NASDAQ Listing Qualifications Panel to appeal this determination and seek
additional time to file the Form 10-K following completion of the restatements of its false financial
statements.

36.     In addition, so that the Company would not be in violation of its financial covenants
with its lenders, the Company was forced to amend its credit facility agreements with its lenders for
additional time to complete its 2002 year end audit process and submit its financial statements, and
related reports, such as the annual budget and excess flow calculation and certification.

37.     Finally, on April 22, 2003, the Company announced it would also be restating for the
entire fiscal year 2000.   Subsequently, on April 29, 2003, the Company announced defendant
Wilkins, a director and the Company's CFO and Executive Vice President, had resigned.

38.     The Individual Defendants, particularly management and the members of the Audit
Committee, were responsible for maintaining and establishing adequate internal controls for AFC
and to ensure that the Company's financial statements were based on accurate financial information.
According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing,
and reporting financial data, a corporation must establish an internal accounting control structure.
Among other things, the Individual Defendants were required under GAAP, to:

17

(1)     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)     transactions are executed in accordance with management's general and specific authorization; and

(b)     transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles.

39.     In addition, according to Appendix D to the Statement on Auditing Standards ("SAS") No. 55, management should consider, among other things, such objectives as: (a) making certain that "[t]ransactions are recorded as necessary ... to permit preparation of financial statements in conformity with generally accepted accounting principles ... [and] to maintain accountability for assets;" and (b) make certain that "[t]he recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences."

40.     According to SAS 55.13:

Establishing and maintaining an internal control structure is an important management responsibility.  To provide reasonable assurance that an entity's objectives will be achieved, the internal control structure should be under ongoing supervision by management to determine that it is operating as intended and that it is modified as appropriate for changes in conditions.

41.     AFC's Proxy Statement filed on April 12, 2002 discloses that one of the primary functions of the Audit Committee is to "[o]versee[] internal systems of accounting controls and procedures."

42.     AFC's Audit Committee Charter's Statement of Policy provides:

The Committee shall provide assistance to the Board of Directors in fulfilling its

oversight responsibility to the Company's stockholders, the investment community, and others relating to the Company's:

> · financial statements and financial reporting process;

> · systems of internal accounting and financial controls;

> · internal audit function;

> · annual independent audit of is financial statements; and

> · legal compliance and ethics programs, as established by management and the Board.

In so doing, it is the responsibility of the Committee to maintain free and open communication between the Committee, independent auditors, the Company's internal auditors, and the Company's management. In discharging its oversight role, the Committee is empowered to investigate any matter brought to its attention will full access to all books, records, facilities, and personnel of the Company and the power to retain outside counsel, or other experts for this purpose. It is the intent of the Committee to comply with all applicable rules and regulations governing the Committee, such as those of the Securities and Exchange Commission and the NASDAQ stock exchange.

43.     The fact that AFC will restate its financial statements for fiscal year 2000, 2001 and the first three quarters of 2002 (*eleven quarters and possibly beyond*) is an admission that the financial statements originally issued were false when issued, and that the overstatement of revenues and income was material. Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement announced by AFC was to correct for material errors in its previously issued financial statements. *See* APB No. 20, ¶¶7-13. The restatement of past financial statements is a disfavored method of recognizing an accounting change because it dilutes confidence by investors in the financial statements, it makes it difficult to compare financial statements, and it is often difficult, if not impossible, to generate the numbers when restatement occurs. *See* APB No. 20, ¶14.     Thus, GAAP provides that financial statements should only be restated in limited

circumstances, *i.e.*, when there is a change in the reporting entity, a change in accounting principles used, or to correct an error in previously issued financial statements. AFC's restatement was not due to a change in reporting entity or a change in accounting principles, but rather to errors in previously issued financial statements. Thus, the restatement is an admission by AFC that its previously issued financial results and its public statements regarding those results were false and misleading.

44.     Due to these accounting improprieties, the Company presented its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

a.     The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

b.     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

c.     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, ¶40);

d.     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for

20

accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

      e.     The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

      f.     The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant in a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

      g     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

      h     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what is purports to represent (FASB Statement of Concept No. 2, ¶¶95, 97).

      45.     The Individual Defendants, particularly the Audit Committee, not only caused the Company to violate GAAP, but also caused the Company to violate its own Audit Committee Charter by failing to, among other things, properly implement, review, and oversee: (i) the Company's financial statements and its financial reporting process; (ii) the systems of internal

accounting and financial control; (iii) the internal audit function; (iv) the annual independent audit of the companies financial statements; and (vi) the legal compliance and ethics programs as established by management and the Board. The sheer magnitude of the length of the restatement period - eleven quarters- evidences that the Individual Defendants, and particularly the Audit Committee, utterly failed to establish and maintain adequate internal controls for AFC to ensure that the Company's financial results were calculated and recorded in accordance with GAAP.

46.     The Individual Defendants' false statements throughout the Relevant Period enabled certain Individual Defendants to obtain millions of dollars of excessive, unearned compensation, which was based in large part on AFC's reported "results of operations." Between 2000 and 2002, Bellati received in excess of $1.6 million in salary, approximately $815,000 million in bonuses in 2000 and 2001, and stock options to buy thousands of shares of AFC stock. During the Relevant Period, Belatti disposed of over $10 million dollars worth of AFC stock. Between 2000 and 2002 Wilkins received in excess of $1 million in salary, approximately $562,000 in bonuses in 2000 and 2001, and stock options to buy thousands of shares of AFC stock. During the Relevant Period, Wilkins disposed of over $2 million dollars worth of AFC stock. Between 2000 and 2002, Holbrook received in excess of $1.2 million in salary, approximately 530,000 million in bonuses in 2000 and 2001 and stock options to buy thousands of shares of AFC stock.   During the Relevant Period, Holbrook disposed of over $6 million dollars worth of AFC stock. While Bellati, Wilkins and Holbrook were selling into the market, they and the other Individual Defendants caused AFC to repurchase millions of dollars of the Company's own stock during the Relevant Period. The rest of the Individual Defendants also received tens of thousands of dollars in compensation and thousands of stock options, many of which, as detailed in ¶¶15-25, were exercised during the Relevant Period

while AFC's stock was artificially inflated.

47.     By issuing these materially false and misleading statements, or acquiescing in their dissemination and publication, the Individual Defendants breached their fiduciary duties of loyalty and good faith, violated GAAP, violated the Company's own Audit Committee Charter, committed gross mismanagement, and abused their control of AFC, by knowingly, recklessly, willfully, intentionally, and/or in the absence of good faith:

a.     Causing AFC to engage in the willful violation of the federal securities laws and to thereby to engage in the fraud alleged herein;

b.     Failing to supervise adequately the financial and operational condition of AFC, specifically in regard to the operations of the Company during the Relevant Period; and concealing from the public the true facts regarding the same;

c.     Failing to adequately supervise the operations of AFC in a manner consistent with preventing deceptive practices such as the accounting fraud complained of herein;

d.     Failing to supervise adequately the officers and employees of AFC and failing to ensure that they act with honesty and integrity in order to preserve and enhance AFC's reputation in the business community;

e.     Exposing AFC to potential liability of millions of dollars, as well as lost goodwill, as a result of their failure to adequately supervise AFC's operations and employees, and to prevent their illegal activity;

f.     Failing to institute legal action against those responsible for causing AFC to engage in the deceptive practices in violation of state and federal securities laws and thereby exposing AFC to liability and other financial injury resulting therefrom;

23

g.     Causing the Company to be liable for the defense and indemnification of those directors and officers responsible for exposing AFC to liability in the above-mentioned securities class actions and other actions;

h.     Failing to ensure that AFC's public filings conformed with the federal and state laws;

i      Engaging in a fraud upon the investment community by drafting or disseminating or approving of the public dissemination of AFC's false financial statements and press releases and other public statements which were materially false and misleading and failed to disclose adverse information about, *inter alia*, the Company's true financial and operational condition and business prospects; and

j      Failing to sue to recover the millions of dollars in illegal insider trading proceeds obtained by Company insiders who traded on non-public, adverse information and for failing to institute insider trading policies to prevent the future usurping of corporate opportunities and insider trading.

48.    The Individual Defendants, as a result of the substantial financial benefits they received and continue to receive as a result of their positions at AFC, engaged in and/or aided and abetted and/or acquiesced in the wrongful actions complained of herein and resolved all conflicts of interest in favor of themselves in order to protect and preserve their positions with AFC and the financial benefits that flow therefrom.

49.    In order to facilitate and to attempt to conceal their wrongdoing, the Individual Defendants, and particularly the Audit Committee, have caused AFC to maintain an inadequate system of internal financial and accounting controls such that AFC's financial statements did not

24

reflect the true condition of the Company.

50.     As a result of the Individual Defendants' wrongful and illegal actions, including their abuse of control and participation in the fraudulent scheme, defendants' violations of state and federal laws, and the failure to maintain a system of internal financial and accounting controls adequate to ensure that the financial statements issued by AFC were true and correct in all material respects, AFC has suffered considerable damage to, and drastic diminution in, the value of its assets, goodwill and reputation in the financial community.

51.     AFC will expend significant sums of money as a result of the illegal and improper actions described above. Such expenditures will include but are not limited to:

a.     Costs incurred as a result of settlements and judgments related to defendants' violation of state and federal laws;

b.     Costs incurred to carry out internal investigations and costs to ensure the Company's stock is not de-listed from NASDAQ; and

k     Costs and legal fees for defending AFC, its officers and its directors against private litigation arising from the illegal and improper conduct alleged herein.

## THE FIDUCIARY DUTIES OF DEFENDANTS

52.     The conduct of AFC's directors and officers complained of herein involves a knowing and/or reckless, culpable violation of their obligations as corporate officers and directors, the absence of good faith on their part, and a reckless disregard of their fiduciary duties to the Company and its shareholders, in which they should have been aware or should have been aware of a risk of serious injury to the Company. As a result of the foregoing acts of gross mismanagement and breach of fiduciary duty, AFC has been damaged in excess of several millions of dollars.

25

53.     The Individual Defendants, in derogation of their responsibilities to AFC, failed to

properly manage the affairs of AFC and its subsidiaries and failed to protect the interests of AFC and

its shareholders. The Individual Defendants failed to adequately exercise control as required by law,

failed in significant measure to fully inform themselves of the affairs of AFC and its subsidiaries,

failed to adequately involve themselves in decision-making. and failed to establish adequate internal

controls over management and the affairs of AFC.

54.     The Individual Defendants owed to the Company the highest duty of loyalty and

honesty, which requires, at a minimum, conducting the Company's affairs in a lawful manner. The

Individual Defendants knowingly and/or recklessly and/or in the absence of good faith breached their

fiduciary duties to AFC by. *inter alia*, failing to establish internal controls sufficient to insure that the

Company's business was carried on in a careful manner and that its reputation and financial assets

were preserved. The Individual Defendants further breached their fiduciary duties by failing to

disclose to the Company and to its shareholders those facts and circumstances concerning the

wrongful conduct complained of herein, which the Individual Defendants had a fiduciary duty to

disclose. To discharge their duties to AFC and its shareholders, the Individual Defendants were

required to exercise reasonable and prudent supervision over the management, policies, practices,

controls and financial affairs of AFC and its subsidiaries. Specifically, they were required, among

other things:

a.     To manage, conduct, supervise and direct the business and affairs of AFC and

its subsidiaries in accordance with applicable law and the Company's charter and bylaws;

b.     To neither violate, nor knowingly and/or recklessly permit any officer,

director, or employee of AFC to violate applicable federal laws, rules and regulations;

26

    c.  To exercise reasonable control and supervision over the Company's officers and employees;

    d.  To maintain a proper division of authority and responsibility among the Company's officers and directors so as to prevent the dominance of any officer or director in the conduct of its business and affairs;

    e.  To exercise reasonable care in evaluation of the prudence and soundness of policies and practices proposed to be undertaken by AFC;

    f.  To ensure that AFC did not engage in unsafe, imprudent, or unsound practices, and to become and remain informed as to how the Company and its subsidiaries and units were, in fact, operating;

    g.  Upon receiving notice or information of an unsafe, imprudent or unsound practice, to make a reasonable investigation in connection therewith, and to take steps to correct that condition or practice; and

    h.  To act in good faith, in the best interests of the Company, and with the care that an ordinary prudent person would have used under similar circumstances.

  55.  The Individual Defendants, acting directly or indirectly, have violated their duty to exercise management stewardship of the Company, in part by failing to provide adequate internal controls, as well as by failing to conduct AFC's business in a careful and prudent manner.

  56.  The Individual Defendants acting either directly or indirectly have failed to devise and maintain an adequate system of internal financial and supervisory controls sufficient to provide reasonable assurances that the Company's assets would be safeguarded, its transactions would be executed in accordance with management's general or specific authorization, its business would be

conducted in a careful and prudent manner, and its financial results reported in accordance with GAAP. As a result of the lack of such adequate controls, repeated wrongful and illegal acts have occurred which have been greatly detrimental to AFC.

57.     As a direct and proximate result of these failures on the part of the Individual Defendants to establish adequate internal controls, and the other wrongful acts attributed to them herein, AFC has suffered damages as set forth herein and has been exposed to enormous potential liability.

## VI.

## DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY

### A.     Plaintiff Is a Fair and Adequate Representative

58.     Plaintiff brings this action derivatively in the right of and for the benefit of AFC to redress injuries suffered and to be suffered by the Company as a direct result of the breaches of fiduciary duties, gross mismanagement, and waste of corporate assets by defendants. AFC is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

59.     Plaintiff will adequately and fairly represent the interests of AFC and its shareholders in enforcing and prosecuting the rights of the Company. Plaintiff was a shareholder at the times complained of herein and continues to hold such shares. Plaintiff is represented by qualified counsel with substantial experience in corporate governance litigation of this nature.

60.     Plaintiff's claims are typical and he has no antagonistic interests with other AFC shareholders, and Plaintiff has no conflicts of interests and will therefore fairly and adequately represent the interests of other similarly situated AFC shareholders.

28

61.     This shareholders' derivative action is brought to remedy violations of Minnesota law. The Company is incorporated in Minnesota, hence, Minnesota statutory and common law governs and controls any and all legal issues in this action.

**B.     Demand Futility Allegations**

**1.     A Majority of the Current Director Defendants
Are Alleged to Have Participated in the Wrongs
Alleged Herein and to Have Personally
Benefitted Therefrom**

62.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

63.     It would be futile to require plaintiff to issue a demand to the Current Director Defendants requesting them to take action against themselves and certain AFC executives for their intentional and/or reckless conduct as alleged herein.  Not only would this require them to investigate and bring claims against themselves for their own misconduct, their actions to date prove conclusively that they will not take action.

64.     As set forth below in particular detail, and at ¶¶15-24 herein, demand is excused because this Complaint alleges with particularity that all, or at the very least a majority of the Current Director Defendants, intentionally and/or recklessly and/or in the absence of good faith breached their fiduciary duties by overseeing AFC's most basic and fundamental financial controls. Each of the Current Director Defendants, or at least a majority, including the Audit Committee, Executive Committee and inside sellers, is alleged to have participated in the unlawful acts alleged herein and to have personally benefitted therefrom.

65.     As detailed herein and below all, or at the very least, a majority of the Current

Director Defendants, participated in, encouraged, sponsored or approved many of the acts and

omissions or were on notice of and/or recklessly and/or in the absence of good faith disregarded the

wrongdoing complained of herein by overseeing AFC's most fundamental accounting controls. It was

known, to defendants, at all times relevant to the allegations raised herein, that the current Director

Defendants directed or permitted AFC to engage in the wrongful acts complained of herein and to

covered up their mismanagement of AFC's affairs in connection with the Company's accounting

which were known.  Consequently, each director has been implicated in direct, active misconduct

causing harm to AFC. By actively participating in or failing to disclose the above-mentioned

activities, the Current Director Defendants violated their fiduciary duties owed to the Company and

its shareholders.

66.     Additionally, the members of the Audit and Executive Committee had a responsibility

to maintain the integrity of AFC's internal audit functions and fiduciary activities, and to assure that

AFC's internal controls were adequate. The wrongful activities alleged herein, occurred, in whole or

in part, because the Company's internal and supervisory controls were wholly inadequate.  The

members of the Audit and Executive Committee knew that the supervisory and monitoring controls

for the Company were inadequate, and that there were no internal controls.  They thereby knowingly

or recklessly permitted the alleged misconduct to take place; in other words, they knew of the

misconduct described herein, permitted it to occur, and deliberately looked the other way.

67.     Indeed, a majority of the Board, members of the Audit Committee, the Executive

Committee, and other inside directors specifically participated in the wrongs alleged herein and

breached their fiduciary duties by, including but not limited to: causing the Company to violate

GAAP; causing the Company to issue false and misleading financial statements; causing the Company to violate its own Audit Charter; and by failing to make any effort to establish and maintain adequate internal accounting controls for AFC to ensure the Company's financial results were calculated and recorded in accordance with GAAP. In addition, as discussed above, Current Director Defendants Belatti, Roth, Spogil, Pennington and Holbrook benefitted from the wrongs alleged herein by engaging in massive self-dealing insider selling. These directors would never authorize a suit against their fellow directors because it would bring scrutiny to their own stock sales. Thus, because the Audit Committee, Executive Committee and inside sellers - a majority of the Board - are defendants and are alleged to have participated in the wrongs alleged herein, demand is excused on this basis alone.

68.    In addition, Belatti participated by engaging in insider selling, and as discussed below, by virtue of his status as CEO, violated the Sarbanes Oxley Act as detailed below. Moreover, as Chairman, CEO, interim CFO and Chairman of the Executive Committee, Belatti, knew that the supervisory and monitoring controls for the Company were inadequate, that there were no internal controls, and they thereby knowingly or recklessly permitted the alleged misconduct to take place; in other words, he knew of the misconduct described herein, permitted it to occur and deliberately looked the other way.

69.    In addition, Belatti, Roth and Spogli, as members of the Executive Committee, had the legal responsibility to monitor and assure AFC's day-to-day compliance with all applicable laws, rules and regulations. Despite their knowledge or reckless disregard of AFC's improper management of its operations and financial condition, these Defendants knowingly and/or recklessly failed to take appropriate corrective or preventive steps.

31

70.   The acts complained of herein by the Current Director Defendants constitute violations of fiduciary duties owed to the Company, and these acts are incapable of ratification.

71.   The acts complained of herein by the Current Director Defendant constitute violations of law and breaches of the fiduciary duties owed by AFC's Board of Directors, and these acts are incapable of ratification.

72.   The participation of the Current Director Defendants, or at the very least a majority is further evidenced in that AFC has been exposed to significant losses, yet the Current Director Defendants have taken no action, against themselves or other present or former employees of the Company who were responsible for that wrongful conduct, to attempt to recover for the Company any part of the damages the Company suffered thereby and, in fact, have permitted defendants to continue to be paid huge sums in order to conceal their complicity in this disaster. A majority of the Current Director Defendants also violated their fiduciary duties by engaging in self-dealing insider sales, as detailed in ¶¶ 15-18, 24, while the Company's stock was artificially inflated as a result of the wrongs complained of herein.

73.   Therefore, as the Current Director Defendants are defendants in this action; and all are alleged with particularity to have participated in the unlawful acts alleged herein (or at the very least the Audit Committee, Executive Committee and inside sellers, and thus a majority of the Board), demand is excused.

### 2.   The Current Director Defendants Failed to Fully Inform Themselves to the Extent Reasonably Appropriate under the Circumstances

74.   The Current Director Defendants failed to have sufficient controls and procedures in place to prevent harm to the Company. They allowed the accounting irregularities to go on for eleven

quarters, eventually forcing the Company to announce it will have to restate for fiscal years 2000, 2001 and for the first three quarters of 2002, and representing one of the longest restatement periods in recent memory. The Current Director Defendants, and especially the Audit Committee, Executive Committee and inside directors (a majority of the Board), failed in significant measure to fully inform themselves of the affairs of AFC, failed to adequately involve themselves in decision-making, and failed to establish adequate internal controls over management and the affairs of AFC, particularly with respect to the Company's financial statements and its financial reporting process.

75.     The sustained and systematic failure of the Current Director Defendants to exercise oversight and to reasonably inform themselves to the extent reasonable under the circumstances, especially given that the failure, which went undiscovered by the directors involves a scheme of such significant magnitude and duration, (eleven quarters) demonstrates demand is futile.

### 3.     The Current Director Defendants Are Not Protected by the Business Judgment Rule

76.     During the Relevant Period, the Current Director Defendants caused the Company to issue numerous false and misleading financial statements in violation of GAAP. The fact that AFC will restate its financial statements for fiscal year 2000 through the first three quarters of 2002 is an admission that the financial statements originally issued were false when issued, and that the overstatement of revenues and income was material.

77.     Because the dissemination of false and misleading financial statements can never be deemed to be the product of a valid exercise of business judgment, demand is excused.

78.     Furthermore, the Current Director Defendants' knowing participation in conspiracy, and/or aiding and abetting of the unlawful activities alleged herein was not – and could never be –

the product of a valid exercise of business judgment, and the wrongful activities at issue in this

shareholders' derivative case are not sheltered from scrutiny by the so-called "business judgment

rule" because:

79.     AFC has been exposed to significant losses due to the Company's illegal scheme to

hide the true financial and operational condition of the Company in order to support the value of

their stock, yet the Current Director Defendants have taken no action against themselves or other

present or former employees of AFC who were responsible for that wrongful conduct in an attempt

to recover for the Company any part of the damage AFC suffered thereby.

80.     The conduct of the current Director Defendants and resulting harm to AFC has

resulted from an obvious and prolonged failure to exercise oversight or supervision by the Board of

Directors.

81.     The wrongful acts complained of and the expenditure of funds complained of,

constitute violations of fiduciary duties owed by each member of the Board of Directors of AFC;

and, therefore, these acts are incapable of ratification.

82.     The acts complained of herein constitute violations of law and breaches of the

fiduciary duties owed by the Director Defendants to AFC and its shareholders, and these acts are

incapable of ratification.

83.     The acts complained of herein are wrongful and the expenditure of funds complained

of constitute a waste of AFC's corporate assets and, thus, are acts incapable of ratification.

### 4.    A Majority of the Current Director Defendants Are Neither Independent Nor Disinterested

84.     The Current Director Defendants cannot be relied upon to reach a truly independent decision as to whether to commence the demanded legal actions against themselves and the officers, and employees responsible for the misconduct alleged in this Complaint because, *inter alia*, the Board of Directors is totally dominated by defendants Roth and Spogli, principals of Freeman Spogli, AFC's largest shareholder, who were personally and directly involved in the misconduct alleged, each of whom approved all of the actions complained of, and to whose directives and views the Board has consistently acceded and will continue to accede. This domination of the Board of Directors by these defendants has impaired its ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether or not to accept plaintiff's demands.

85.     In order to bring this action for breach of their fiduciary duties, the members of AFC's Board of Directors would be required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their good friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do. Therefore, the Current Director Defendants would not be able to vigorously prosecute any such action.

86.     The members of AFC's Board of Directors receive payments, benefits and other emoluments by virtue of their Board membership and their control of AFC. Thus, they have benefitted from the wrongdoing alleged herein and have engaged in such conduct in order to preserve their positions of control and the perquisites thereof, and are, therefore, incapable of exercising independent objective judgment in deciding whether or not to bring this action. The Board members also have close personal and business ties with each other and are, consequently, interested parties who cannot in good faith exercise independent business judgment to determine whether or not to

35

bring this action against themselves.

87.    All of the Current Director Defendants (or at the very least, a majority of the Board) are subject to the following prejudicial entanglements which illustrate they are neither disinterested nor independent:

### a.    Defendant Belatti

88.    Defendant Belatti is directly interested because he is Chairman, CEO, and a member of the Executive Committee and directly participated in the wrongs as alleged herein. Belatti is also interested because he personally benefitted by engaged in massive insider trading as alleged in ¶15. Belatti would never institute a suit against his fellow directors because it would bring scrutiny to his own stock sales. Bellati also serves on the board of directors of Galyan's Trading Company, Inc. along with director defendants' Roth, Spogli, and Starrett, a company in which defendant Freeman Spogli invests. In 1996, Belatti oversaw the sale of a major stake in AFC to an investment firm, Freeman Spogli. Two of the principals of Freeman Spogli, defendants Roth and Spogli, joined the AFC board that same year and continue to serve as directors. Freeman Spogli is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock. In addition, defendant Starrett is an affiliated operating executive of Freeman Spogli. Belatti is also interested by virtue of his status as CEO violated the Sarbanes Oxley Act as detailed below.

### b.    Defendant Pennington

89.    Defendant Pennington is directly interested because he is a member of the Audit Committee and directly participated in the wrongs alleged herein. Pennington is also interested because he personally benefitted by engaging in massive insider trading as alleged in ¶16. Pennington would never institute a suit against his fellow directors because it would bring scrutiny to

his own stock sales. Defendant Pennington is also neither disinterested nor independent because he served on the Compensation Committee which establishes salaries, bonuses and stock option awards for executive officers on an annual basis, including defendant Belatti. Thus, Pennington would never institute a suit against Belatti because it would further implicate him in the wrongs complained of herein.

### c.    Defendant Roth

90.    Defendant Roth is directly interested because he is a member of the Executive Committee and directly participated in the wrongs alleged herein. Roth is also interested because he personally benefitted by engaging in massive insider trading as alleged in ¶¶17 and 26. Roth would never institute a suit against his fellow directors because it would bring scrutiny to his own stock sales. Defendant Roth is also neither disinterested nor independent because he served on the Compensation Committee, which establishes salaries, bonuses and stock option awards for executive officers on an annual basis, including defendant Belatti. Thus, Roth would never institute a suit against Belatti because it would further implicate him in the wrongs complained of herein. In addition, Roth also serves on the board of directors of Galyan's Trading Company, Inc., along with defendant directors Belatti, Spogli and, Starrett, a company in which Freeman Spogli invests. Roth also serves on the board of directors of Advance Auto Parts, Inc. along with director defendant Spogli, another company in which Freeman Spogli invest. Roth is a principal of Freeman Spogli, which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock.

### d. Defendant Spogli

91.    Defendant Spogli is directly interested because he is a member of the Executive Committee and directly participated in the wrongs alleged herein. Spogli is also interested because he personally benefitted by engaging in massive insider trading as alleged in ¶¶18 and 26. Spogli would never institute a suit against his fellow directors because it would bring scrutiny to his own stock sales. Spogli also serves on the board of directors of Galyan's Trading Company, Inc., along with defendant directors Belatti, Roth and Starrett, a company in which Freeman Spogli invests. Spogli also serves on the board of directors of Advance Auto Parts, Inc., along with director defendant Roth, another company in which Freeman & Spogli invests. Spogli is a founding principal of Freeman Spogli, which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement owning, 24.4% of the Company's stock

### e. Defendant Byrd

92.    Defendant Byrd is directly interested because she is a member of the Audit Committee and directly participated in the wrongs alleged herein. Byrd also serves on the board of directors of Rare Hospitality International, Inc. along with defendant director Holbrook.

### f. Defendant Figel

93.    Defendant Figel is directly interested because he is a member of the Audit Committee and directly participated in the wrongs alleged herein. In addition, from October 1986 to December 1996, Figel was employed by Freeman Spogli, which is AFC's largest shareholder as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock.

### g.   Defendant Holbrook

94.      Defendant Holbrook is directly interested because he is a director of AFC, its President, and COO, and directly participated in the wrongs alleged herein. Holbrook is also interested because he personally benefitted by engaging in massive insider trading as alleged in ¶ 24. Holbrook would never institute a suit against his fellow directors because it would bring scrutiny to his own stock sales. Holbrook also serves on the board of directors of Rare Hospitality International, Inc. along with defendant director Byrd.

### h.   Defendant Arias

95.      Defendant Arias is neither disinterested nor independent because he served on the Compensation Committee which establishes salaries, bonuses and stock option awards for executive officers on an annual basis, including defendant Belatti.  Thus, Arias would never institute a suit against Belatti because it would further implicate him in the wrongs complained of herein.

### i.   Defendant Starrett

96.      Starrett serves on the board of directors of Galyan's Trading Company, Inc. along with defendant directors Belatti, Roth and Spogli, a company in which Freeman Spogli invests in. Starrett is also an affiliated operating executive of Freeman Spogli. which is AFC's largest shareholder, as identified in the Company's 2002 Proxy statement, owning 24.4% of the Company's stock. Starrett is also interested because he personally benefitted by engaging in insider trading as alleged in ¶ 19. Starrett is also a director of The Pantry, Inc., a company in which Freeman Spogli invests.

### 6.   The Current Director Defendants' Conduct Was so Egregious on its Face That It Is Not Protected by the Business Judgment Rule

97.     The Current Director Defendants' conduct was so egregious on its face that it could not have been the product of sound business judgment. The accounting irregularities alleged herein were covered-up and/or went undiscovered for eleven quarters, eventually resulting in the Company admitting twice it will have to restate its financial statements for fiscal years 2000, 2001 and for the first three quarters of 2002. Had the Current Director Defendants, and particularly the Audit Committee, and Executive Committee and management, had even minimum internal controls in place, the Company would not be subject to the damages sustained as alleged herein. Thus, the Current Director Defendants' conduct was so egregious on its face that it could not have been the product of sound business judgment.

98.     In addition, and as a result, the Current Director Defendants face a substantial likelihood of liability in connection with their intentional and/or reckless failures to ensure that AFC had adequate internal controls and complied with applicable laws, especially with their knowledge or acquiescence in AFC's repeated misrepresentations to the financial markets.

99.     As specified in detail herein, the Current Director Defendants were, or at the very least should have been, aware of critical facts regarding the Company's accounting and that the Board was engaging in business practices that violated its fiduciary obligations to the shareholders.

100.    Despite their knowledge of these facts, the Current Director Defendants intentionally and/or recklessly allowed the Company to disseminate false and misleading financial information to the investing public.

101.    The Current Director Defendants undertook this course of conduct with intentional and/or reckless breach of their fiduciary duties because they were afraid that taking the drastic action that was necessary to correct and address the severe lack of any internal controls would: (a) harm the

market price of AFC stock; (b) result in the loss of goodwill in the investing community; and (c) jeopardize their personal reputations and financial interests.

### 7. Insured Versus Insured Exclusion

102. Upon information and belief, the Director Defendants are protected against personal liability for their acts of waste and breach of fiduciary duty alleged in this Complaint by very substantial directors' and officers' liability insurance, which they caused the Company to purchase for their protection and which has been paid for with corporate funds (*i.e.*, monies belonging to AFC's shareholders). Upon information and belief, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, however, the applicable liability insurance policies covering defendants in this case contain provisions which eliminate coverage for *any* action brought directly by AFC against these defendants; such provisions are known, *inter alia*, as the "*insured versus insured exclusion*." As a result, if AFC's directors were to sue themselves or certain of the Company's officers, there would be no applicable insurance protection and, thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery for the multi-million dollar damages it has sustained.

### CAUSES OF ACTION

### COUNT I

### (Breach of Fiduciary Duties Against All Individual Defendants)

103. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

104. The Individual Defendants are fiduciaries of AFC and of all of its public shareholders,

41

and owe to them the duty to conduct the business of the Company loyally, faithfully, carefully, diligently and prudently. A fiduciary duty is the highest duty imposed by law. This count is asserted based upon the Individual Defendants' acts in violation of Minnesota common law, which acts constitute breach of fiduciary duty.

105.    Each of the Individual Defendants actively participated in and/or approved the Company's improper practices, as alleged herein. These actions violated the Individual Defendants' fiduciary duties and could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests. The Individual Defendants violated their duty of loyalty to AFC and negligently and/or recklessly and/or intentionally violated their fiduciary duties to the Company and its shareholders.

106.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, AFC has sustained damages, as alleged herein.

## COUNT II

### (Derivative Claim for Abuse of Control Against All Individual Defendants)

107.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

108.    The Individual Defendants' conduct constituted an abuse of their ability to control and influence AFC, for which they are legally responsible.

109.    By reason of the foregoing, AFC has been damaged, and will continue to sustain damages.

## COUNT III

### (Derivative Claim for Constructive Fraud Against All Defendants)

110.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

111.    As a result of the tortuous conduct described above, all defendants have made, or aided and abetted the making of, numerous misrepresentations to, and concealed material facts from, AFC and its shareholders despite the defendants' fiduciary duties to, *inter alia*, disclose the true facts regarding their stewardship of AFC and defendants' true intentions, and thus have committed and/or aided and abetted constructive fraud.

112.    The public representations discussed above were false and materially misleading as earlier alleged.

113.    As a part of this conspiracy, these defendants actively made or concealed, and/or participated in the making of or aided and abetted the making or perpetration or the concealment of, numerous omissions and misrepresentations of facts regarding AFC to shareholders, as more fully set forth above. Said representations and statements were untrue and the defendants did not believe them to be true when made, or knowingly, willfully and/or intentionally made them without regard to their truthfulness, or aided and abetted the making of said representations. Said acts by the defendants were fraudulent, oppressive and malicious.

114.    As a direct and proximate result of the foregoing, shareholders and the Company reasonably relied upon the honesty and integrity of the defendants as corporate officers and directors and were induced to act upon such misrepresentations, and have been damaged, entitling AFC to compensatory and punitive damages.

43

115.    By reason of the foregoing, AFC has sustained, and will continue to sustain, damages and they are entitled to an award of punitive damages against the defendants.

## COUNT IV

### (Derivative Claim for Gross Mismanagement Against the Individual Defendants)

116.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

117.    As detailed more fully herein, the Individual Defendants each have and had a duty to AFC and its shareholders to prudently supervise, manage and control AFC's operations.

118.    The Individual Defendants by their actions, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and duties with regard to prudently managing the assets of AFC in a manner consistent with the operations of a publicly held corporation.

119.    By subjecting AFC to the unreasonable risk of liability, by engaging in the fraud described herein and/or by concealing this fraud and its effect on AFC's profitability, the Individual Defendants breached their duties of due care and diligence in the management and administration of AFC's affairs and in the use and preservation of AFC's assets.

120.    The Individual Defendants caused the Company to engage in this misconduct and were aware of the problems and probable losses associated therewith. During the course of the discharge of their duties, these defendants knew or should have known of the unreasonable risks, yet these defendants caused AFC to engage in this scheme which these defendants knew had an unreasonable risk of material loss to the Company, thus breaching their duties to both AFC and its shareholders. As a result, the Individual Defendants grossly mismanaged or aided and abetted the

gross mismanagement of AFC and its assets by causing it to perpetrate a fraud which the defendants knew would likely lead to material and substantial restatements and losses.

121.    As a proximate result thereof, AFC has been damaged and will continue to suffer damages, and is entitled to an award of punitive damages against the defendants.

## COUNT V

### (Derivative Claim for Waste of Corporate Assets Against the Individual Defendants)

122.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

123.    As a result of the foregoing conduct, the Individual Defendants have caused AFC to waste valuable assets and have subjected the Company to potential material liability for securities fraud, possibly reaching hundreds of millions of dollars in damages as well as significant legal defense fees.

124.    Also, as a result of the foregoing conduct, the Individual Defendants caused AFC to spend Company money on an internal investigation.

125.    By reason of the foregoing, AFC has been damaged, and will continue to sustain damages

## COUNT VI

### (Unjust Enrichment Against Defendants Belatti and Wilkins)

126.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

127.    As alleged herein, Belatti and Wilkins, from 2000 through 2002, received substantial bonuses plus options to purchase AFC common stock based on the Company's materially overstated

45

financial performance.

128.   As a result of the wrongful conduct of Belatti, Wilkins and the other Individual Defendants, Belatti and Wilkins were unjustly enriched at the expense of the Company.

129.   The Company is entitled to disgorgement of all bonuses and stock options Belatti and Wilkins received as a result of the wrongful conduct of Belatti, Wilkins and the other defendants.

## COUNT VII

### (Against the Insider Selling Defendants, for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information)

130.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

131.   As alleged herein, certain of the Individual Defendants and Freeman Spogli, engaged in insider selling during the Relevant Period.

132.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew, or should have known the information described above, and sold AFC common stock on the basis of such information.

133.   The information described above was proprietary, non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold AFC common stock.

134.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of AFC common stock while in possession and control of this material, adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

46

135.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

136.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold AFC common stock on the basis of such information.

### COUNT VIII

**(For Forfeiture of Bonuses and Illicit Profits Against Defendants Belatti and Wilkins)**

137.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

138.    AFC's will be required to restate previously reported financial results for 2000, 2001, and the first three quarters 2002.

139.    Pursuant to the Sarbanes-Oxley Act of 2002, §304, because AFC will be required to prepare an accounting restatement for fiscal years 2000, 2001 and the first three quarters of 2002 due to material noncompliance with GAAP, as a result of misconduct, with any financial reporting requirement under the securities laws, Defendant Belatti, as AFC's CEO and Defendant Wilkins, as AFC's CFO, are required to reimburse AFC for all bonuses or other incentive-based or equity-based compensation received by them from AFC between 2000 and 2002 and the profits they realized from the sale of AFC securities during that period.

140.    Defendants Belatti and Wilkins are also liable to plaintiffs for reasonable costs and attorneys' fees in the prosecution of this derivative action on behalf of AFC.

WHEREFORE, plaintiff demands judgment as follows:

(1)    Declaring that the Individual Defendants, and each of them, have committed breaches of their fiduciary duties to AFC;

(2)    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and other violations of law;

(3)    Awarding disgorgement in favor of AFC of all bonuses and stock options unjustly received by Defendants Belatti and Wilkins as well as all ill-gotten gains from defendants' insider trading;

(4)    Declaring Defendant Belatti, as AFC's CEO and Defendant Wilkins, as AFC's CFO, are required to reimburse AFC for all bonuses or other incentive-based or equity-based compensation, received by them from AFC between 2000 and 2002 and the profits they realized from the sale of AFC securities during that period for violation of §304 of the Sarbanes-Oxley Act of 2002;

(5)    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

(6)    Granting such other and further relief as the Court deems just and proper, including injunctive relief; and

(7)     A trial by jury on all issues so triable.

This *5th* day of *June*, 2003.

_____
Steven J. Estep
Georgia Bar No.  250450

COHEN, COOPER & ESTEP
3350 Riverwood Parkway
Suite 2220
Atlanta, GA  30339
Tel: (404) 814-0000
Fax: (404) 816-8900

Of counsel:

GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, TN 37201
(615) 244-2202
(615) 252-3798 fax

BRIAN J. ROBBINS
JEFFREY FINK
ROBBINS UMEDA & FINK, LLP
1010 Second Avenue
Suite 2360
San Diego, CA 92101
(619) 525-3990
(619) 525-3991 fax

## VERIFICATION

I, Wesley Fortenberry, hereby declare as follows:

I am a shareholder of AFC Enterprises, Inc. ("AFC") and have been during the relevant times pertinent hereto. I certify under penalty of perjury that I have reviewed the foregoing Derivative Complaint and authorized its filing and that the contents in the Derivative Complaint are true to the best of my knowledge, information and belief.

_____
WESLEY FORTENBERRY

# ORIGINAL

AO 441 (Rev. 5/85) Third Party Summons in a Civil Action

# United States District Court

Northern        District of        Georgia
              Atlanta              Division

Weis-Buy Services, Inc. and Tom Lange
Company, Inc., et al.

**THIRD PARTY SUMMONS IN A
CIVIL CASE**

PLAINTIFF

CASE NUMBER:        1:02CV2039-TWT

V. DEFENDANT AND THIRD PARTY PLAINTIFF

John Manning Co., Inc.

V. THIRD PARTY DEFENDANT

Gamillo Lee and Ran Lee d/b/a Jimmy Carter Farmers Market, et al.

To:  Name and address of Third Party Defendant
 Gamillo Lee d/b/a Jimmy Carter Farmers Market, et al
4960 Avala Park Lane
Norcross, GA  30092

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this court and serve upon

| PLAINTIFF'S ATTORNEY (name and address) | DEFENDANT AND THIRD-PARTY PLAINTIFF'S ATTORNEY (name and address) |
|---|---|
| See attached list | John A. Howard, Esq.<br>Burr & Forman LLP<br>600 W. Peachtree Street<br>Suite 1200<br>Atlanta, Georgia 30308<br>(404) 815-3000 |

an answer to the third-party complaint which is herewith served upon you within      20      days after service of this
summons upon you  exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the third-party complaint. There is also served upon you herewith a copy of the complaint of the
plaintiff. You have the option of answering or not answering the plaintiff's complaint, *unless* (1) this is a case within Rule
9(h) Federal Rules of Civil Procedure, *and* (2) the third-party plaintiff is demanding judgment against you in favor of the
original plaintiff under the circumstances described in Rule 14(c) Federal Rules of Civil procedure, in which situation you
are required to make your defenses, if any, to the claim of plaintiff as well as to the claim of the third-party plaintiff.

LUTHER D. THOMAS

JUN 0 2 2003

CLERK

DATE

*J. Trigg*

(By) DEPUTY CLERK

151168

PLAINTIFFS' ATTORNEYS:

David A. Adelman, Esq.
Keaton & Associates
1278 W. Northwest Highway
Suite 903
Palatine, IL 60067

J. Christopher Simpson, Esq.
James Martin, Esq.
Simpson Law Offices, LLP
550 Pharr Road, Suite 410
Atlanta, GA 30305

**Attorneys for Weis-Buy, et al.**

Lawrence H. Meuers, Esq.
Katy L. Koestner, Esq.
Meuers Law Firm, P.L.
5395 Park Central Court
Naples, Florida 34109

Jeremy A. Moulton, Esq.
Moulton & Massey, LLC
925 Railroad Street
Conyers, GA 30012

**Attorneys for Tom Lange, et al.**

AO 441 (Rev. 5/85) Third Party Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me [1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant.  Place where served: _____

_____

☐ Left copies thereof at the third-party defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Statement of Service Fees is true and correct.

Executed on _____      _____
                    Date                     Signature of Server

                              _____
                              Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

151168